UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMMY SEYMORE,

        Plaintiff,

v.

        Case No. 25-cv-10580
        HON. MARK A. GOLDSMITH

NOAH NAGY, et al.,

        Defendants.
_____/

**OPINION & ORDER (1) SUMMARILY DISMISSING THE COMPLAINT, (2) DENYING DEFENDANTS' MOTIONS TO DISMISS AS MOOT (Dkts. 18, 25, 26), DENYING DEFENDANT'S MOTION FOR SCREENING THE COMPLAINT AS MOOT (Dkt. 22), AND DENYING DEFENDANTS' MOTION TO STRIKE AS MOOT (Dkt. 31)**

        This is a pro se prisoner civil rights case filed under 42 U.S.C. § 1983. Michigan prisoner Tommy Seymore filed a complaint against Defendants Warden Noah Nagy, Deputy Warden Jerred, Sergeant Melvin, Healthcare Provider Hollister, Healthcare Provider Goading, and Healthcare Provider Nastally. Compl. (Dkt. 1). Seymore sues Defendants for violations of his First, Eighth, and Fourteenth Amendment rights arising from the care he received after being exposed to scabies. He states that the claims occurred at the G. Robert Cotton Correctional Facility in Jackson, Michigan. Defendant Goading filed a motion to screen the complaint (Dkt. 22). All Defendants, including Defendant Goading, have filed motions to dismiss. (Dkts. 18, 25, 26). Defendants Nagy, Jerred, Melvin, and Hollister also filed a motion to strike. (Dkt. 31).

        The Court has reviewed the complaint and concludes that it will be summarily dismissed for failing to state a legally cognizable claim pursuant to the screening standards under 28 U.S.C. § 1915A. In light of the Court's screening dismissal, Defendants' motions are denied as moot.

## I.     BACKGROUND

Seymore states that on May 13, 2022, he was placed in quarantine because of possible scabies exposure. See Dkt. 1, PageID.1. He states that on May 16, 2022, Defendant Nagy placed the C-Unit on lock down in response to the scabies outbreak until each inmate had been screened by a healthcare provider. Id. at PageID.2. Defendants Hollister, Goading, and Nastally inspected Seymore and concluded that he did not have scabies. Defendants Hollister, Goading, and Nastally then directed Seymore to take "seven undisclosed pills in a plastic cup." Id. at PageID.2. Seymore alleges that Defendants did not ask him if he had any allergies or inquired about whether he was taking any other medications. He states that they did not inform him of any side effects. Id. Defendants told Seymore that the medication, Ivermectin,[1] was preventative.

Seymore initially refused to take the medication and requested to substitute the pills for a topical medication, which Defendants denied. He states that after declining the medication, Defendants became hostile and requested that he be placed in segregation. Seymore was held in segregation for nine hours. He was then told by another officer that Defendant Melvin stated that "if he refuse[d] to take the pills, Melvin was going to place him [in] the medical ward with COVID-19 positive and scabies positive cases." Id. at PageID.3. Seymore says that he then took the medication, but was not properly informed of the side effects, which he claims included death.

Seymore sues Defendants for violating his Fourteenth Amendment rights by failing to properly inform him of the medication's risks. He further alleges that Defendants retaliated against him and violated his Eighth Amendment rights against deliberate indifference to serious medical needs. He seeks monetary and injunctive-type relief. Because Seymore has paid the filing fee,

---

[1] Ivermectin is an oral medication used to treat scabies. https://www.cdc.gov/scabies/hcp/clinical-care/index.html (last visited September 2, 2025).

Defendants have been served with a copy of the Complaint. At this time, Defendant Nastally has filed an Answer. (Dkt. 15). Defendants Hollister, Jerred, Melvin, Nagy, Gooding, and Nastally have filed motions to dismiss under Fed. R. Civ. P. 12(B)(6). (Dkt. 18, 25, 26).

## II.     LEGAL STANDARD

The Prison Litigation Reform Act of 1996 requires federal district courts to screen a prisoner's complaint and to dismiss the complaint or any portion of it if the allegations are frivolous, malicious, fail to state a claim for which relief can be granted, or seek monetary relief from a defendant who is immune from such relief. Flanory v. Bonn, 604 F.3d 249, 252 (6th Cir. 2010) (citing 28 U.S.C. §§ 1915(e) and 1915A and 42 U.S.C. § 1997e); Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001) (citing 28 U.S.C. §§ 1915(e)(2) and 1915A). "District courts are required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel, as the statute does not differentiate between civil actions brought by prisoners." In re Prison Litigation Reform Act, 105 F.3d 1131, 1134 (6th Cir. 1997).

Seymore prepaid the filing fee for this action, and courts may not summarily dismiss a prisoner's fee-paid complaint under 28 U.S.C. § 1915(e)(2) because that section applies only to complaints filed in forma pauperis. Benson v. O'Brian, 179 F.3d 1014, 1015-17 (6th Cir. 1999). Benson, however, does not prohibit federal courts from screening a prisoner's fee-paid civil rights complaint against government officials under § 1915A. Hyland v. Clinton, 3 F. App'x 478, 478–479 (6th Cir. 2001). Thus, if a prisoner's complaint seeks relief from a governmental entity, officer, or employee, Congress has directed that the district court must dismiss it, or any part thereof, which (a) is frivolous, malicious, or fails to state a claim upon which relief can be granted, or (b) seeks monetary relief from a defendant who is immune from suit for monetary damages. 28

3

U.S.C. § 1915A. "Such a dismissal may occur at any time, before or after service of process and before or after the defendant's answer." Runnels v. Charles, 2020 WL 1897367, at *1 (E.D. Tex. Mar. 18, 2020), report and recommendation adopted, 2020 WL 1891717 (E.D. Tex. Apr. 16, 2020) (citing Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986)); see also Edge v. Mahlman, 2021 WL 3725988, at *2 (S.D. Ohio Aug. 23, 2021) (screening complaint after defendants filed Rule 12(c) motion for judgment on the pleadings). A complaint is frivolous if it lacks an arguable basis in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989).

Pro se complaints are held to "less stringent standards" than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). While a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (punctuation modified). Stated differently, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

To state a claim under 42 U.S.C. § 1983, a civil rights plaintiff must plausibly allege: (i) the violation of a right secured by the Constitution or another law of the United States, and (ii) that the violation was committed by a person acting under color of state law. Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009).

### III. DISCUSSION

**A. Personal Involvement**

4

Seymore's allegations against Warden Nagy and Deputy Warden Jerrod are insufficient to state a claim under § 1983 because he fails to state how these Defendants were personally involved in violating his constitutional rights. It is well-settled that a civil rights plaintiff must allege the personal involvement of a defendant to state a claim under § 1983 and that liability cannot be based upon a theory of respondeat superior or vicarious liability. Monell v. Department of Social Svs., 436 U.S. 658, 691-92 (1978); Turner v. City of Taylor, 412 F.3d 629, 643 (6th Cir. 2005) (plaintiff must allege facts showing that defendant participated, condoned, encouraged, or knowingly acquiesced in alleged misconduct to establish liability).

Seymore alleges only that Defendants "set in motion" a series of events leading to the violation of his constitutional rights. Compl. at PageID.5. He does not allege any facts explaining what these Defendants did or did not do to violate his rights. He also does not allege facts showing that any claimed injury is the result of a policy or regulation, or that any improper conduct arose from the deliberate failure to adequately investigate, train, or supervise employees. See Ellis v. Cleveland Mun. Sch. Dist., 455 F.3d 690, 700 (6th Cir. 2006) (setting forth three-part test for such claims); see, e.g., Siggers v. Campbell, 652 F.3d 681, 695 (6th Cir. 2011) (affirming dismissal of claims brought against prison warden where plaintiff had "not alleged sufficient personal involvement by [the warden]" or alleged that the warden was "actively engaged in unconstitutional behavior"). Conclusory allegations are insufficient to state a civil rights claim under § 1983. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555-57; Crawford-El v. Britton, 523 U.S. 574, 588 (1998); Moldowan v. City of Warren, 578 F.3d 351, 390-91 (6th Cir. 2009). Accordingly, Seymore's threadbare allegations against these Defendants do not state a claim. Accordingly, Defendants Jerrod and Nagy are dismissed from the Complaint.

B. **Fourteenth Amendment**

Seymore's allegations that the conduct of all Defendants violated his Fourteenth Amendment due process rights fails to state a claim. Seymore states that Defendants violated his Fourteenth Amendment due process rights by "failing to properly inform [him] of the risks of the Ivermectin pills[.]" Compl. at PageID.3.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." Bazzetta v. McGinnis, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (citations omitted). Further, "[s]ubstantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs., 640 F.3d 716, 728 (6th Cir. 2011) (quoting Howard v. Grinage, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" Prater v. City of Burnside, 289 F.3d 417, 431 (6th Cir. 2002) (quoting United States v. Salerno, 481 U.S. 739, 746 (1987)).

Courts have recognized that prisoners "retain a limited right to refuse treatment and a related right to be informed of the proposed treatment and viable alternatives," and some courts have analyzed a failure to do so as a claim arising under the Due Process Clause of the Fourteenth Amendment. White v. Napoleon, 897 F.2d 103, 112–114 (3d Cir. 1990) (discussing that pursuant

6

to the Due Process Clause of the Fourteenth Amendment, "[p]risoners have a right to such information as is reasonably necessary to make an informed decision to accept or reject proposed treatment, as well as a reasonable explanation of the viable alternative treatments that can be made available in a prison setting"); Benson v. Terhune, 304 F.3d 874, 884–885 (9th Cir. 2002) (discussing the Third Circuit's recognition of the right to medical information as set forth in Napoleon and describing it as a "reasonable application of Supreme Court precedent"); see Pabon v. Wright, 459 F.3d 241, 246 (2d Cir. 2006) (discussing that "the Fourteenth Amendment's recognized liberty interest in an individual's right to refuse medical treatment carries with it a concomitant right to such information as a reasonable patient would deem necessary to make an informed decision regarding medical treatment," and that "[t]o establish a violation of this right, a prisoner must show that (1) government officials failed to provide him with such information; (2) this failure caused him to undergo medical treatment that he would have refused had he been so informed; and (3) the officials' failure was undertaken with deliberate indifference to the prisoner's right to refuse medical treatment"); see also Knight v. Grossman, 942 F.3d 336, 342–344 (7th Cir. 2019) (adopting the standard set forth in Pabon).

In this case, Seymore fails to show that he was denied any right to make an informed medical decision and refuse medical treatment. "While '[t]he Supreme Court has held that individuals in state custody enjoy [a] protectable liberty interest[ ] . . . to refuse medical treatment[,]' Noble v. Schmitt, 87 F.3d 157, 161 (6th Cir. 1996), that right is not absolute and is particularly susceptible to regulation in the prison setting." Davis v. Agosto, 89 F. App'x 523, 528 (6th Cir. 2004). Indeed, "[t]he State has undertaken the obligation to provide prisoners with medical treatment consistent not only with their own medical interests, but also with the needs of the institution." Washington v. Harper, 494 U.S. 210, 225 (1990). The Michigan Department of

7

Corrections (MDOC) has a legitimate interest in preventing the spread of an infectious disease such as scabies. Although Seymore states that he asked for an alternative medication, he does not allege that such option was available to him. Considering the MDOC's legitimate interest in protecting its prisoners, it was reasonable of Defendants to either require Seymore to take the Ivermectin pills or quarantine in the medical ward. Seymore's taking of the pills without being informed of their potential adverse side effects does not amount to a Fourteenth Amendment due process violation under these circumstances.

### C. Retaliation

Seymore also claims that Defendants violated his First Amendment right to be free from retaliation. Seymore appears to allege that Defendants Hollister, Goading, and Nastally retaliated against him for initially refusing to take the Ivermectin medication. He alleges that Defendants "threatened" to place him in segregation for six weeks. Compl. at PageID.2. Seymore states he was ultimately placed in segregation for nine hours.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. See Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (i) the plaintiff was engaged in protected conduct; (ii) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (iii) the adverse action was motivated, at least in part, by the protected conduct. Id. Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. See Smith v. Campbell, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

Seymore cannot establish a retaliation claim because he fails to allege that he engaged in any protected conduct. Seymore relies solely on the allegation that his refusal to take the Ivermectin medication constituted protected conduct. However, the United States Court of Appeals for the Sixth Circuit, recently noted that protected conduct for purposes of a First Amendment retaliation claim does not encompass refusing medical treatment. See Heard v. Landfair, No. 23-1277, 2024 WL 1252399, at *2 (6th Cir. Jan. 2, 2024) (citing Carter v. Ayala, No. 1:13-cv-807, 2014 WL 4660320, at *2 (W.D. Mich. Sept. 17, 2014), aff'd, No. 17-1506, 2018 WL 2086044 (6th Cir. Jan. 3, 2018)). Seymore has not engaged alleged any other facts showing that he engaged in protected conduct. Because Seymore fails to establish each of the elements of retaliation, this claim is dismissed.

### D. Eighth Amendment Deliberate Indifference

Seymore also appears to claim that Defendants violated his Eighth Amendment rights by forcing him to take the Ivermectin medication [2] and failing to obtain informed consent prior to administering the pills.

Under the Eighth Amendment, prisoners have a constitutional right to medical care. Estelle v. Gamble, 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. Id. at 104. The Supreme Court has defined "deliberate indifference" as the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice to state a claim under § 1983. Farmer v. Brennan, 511 U.S. 825, 835–836 (1994). An

---

[2] The Supreme Court has recognized an individual liberty interest in freedom from the forcible administration of antipsychotic medication that is protected by the due process clause of the Fourteenth Amendment. Harper, 494 U.S. at 221–222 (1990). While Seymore does not explicitly allege his Fourteenth Amendment rights were violated through the forcible administration of medication, to extent that he also seeks to raise this claim, he alleges only that he was treated with Ivermectin, not any antipsychotic medication. Therefore, the principles set forth under Harper do not apply in this context.

Eighth Amendment claim has two components, one objective and the other subjective. Farmer, 511 U.S. at 834; Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" Id. In Farmer, the Court held that the objective test requires that "the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. at 834; see also Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 895 (6th Cir. 2004). Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Comstock, 273 F.3d at 702.

The Supreme Court has not directly addressed whether involuntarily medicating an inmate could run afoul of the Eighth Amendment's Cruel and Unusual Punishment Clause. See Hoyt v. Big Spring State Hosp., No. 6:15-cv-0003-BL, 2016 WL 7189844, at *13 (N.D. Tex. Dec. 8, 2016). Nevertheless, the Sixth Circuit has stated that "the logical inference from [Supreme Court] holdings is that subjecting a prisoner to involuntary medication when it is not absolutely necessary or medically appropriate is contrary to the 'evolving standards of decency' that underpin the Eighth Amendment." Thompson v. Bell, 580 F.3d 423, 440 (6th Cir. 2009).

Even assuming involuntarily medicating an inmate runs afoul the Eighth Amendment, Seymore's factual allegations belie any claim that he was involuntarily administered medication. Seymore states that when given the choice between taking the Ivermectin or being placed in the medical ward, he chose to take the pills. See Compl. at PageID.3 ("Plaintiff, who is a COVID-19 survivor, did not want to be exposed to and potentially die from this air borne virus . . . [u]nder duress Plaintiff took the Ivermectin pills[.]"). While Seymore may have been displeased about the choice, Defendants did not forcibly administer Ivermectin.

10

Seymore's claim that Defendants exhibited deliberate indifference by failing to inform him of the potential side effects of Ivermectin also fails. This type of claim generally sounds in negligence and does not rise to the level of deliberate indifference. See, e.g., Bryant v. Kaskie, 744 F. App'x 39, 42 (3d Cir. 2018) (concluding that the prison medical provider's "failure to inform [the prisoner-plaintiff] of the potential side effects of [a prescribed medication] [wa]s insufficient to demonstrate deliberate indifference"); Anger v. Bureau of Health Servs., No. 13-12143, 2014 WL 859717 at *16, 2014 U.S. Dist. LEXIS 28247 at *34 (E.D. Mich. Jan. 8, 2014) (implying that it is only negligence when a doctor fails to obtain informed consent before changing a prisoner's mental health medications). Accordingly, he does not state an Eighth Amendment claim on this basis.

Additionally, to the extent Seymore claims that Defendants' failure to check whether he was taking any other medications or allergic to Ivermectin prior to administering the pills, such a claim also sounds more in negligence than recklessness. See Sanderfer v. Nichols, 62 F.3d 151, 155 (6th Cir. 1995) ("While perhaps in hindsight [defendant] should have checked [inmate's] medical history records, her failure to do so is negligence at most."); Moore v. Williams, 4:20-cv-1416-RLW, 2021 WL 366722, at *4, 2021 U.S. Dist. LEXIS 20587, at *9 (E.D. Mo. Feb. 3, 2021) (doctor's failure to check medical records before prescribing a new medication that the plaintiff was allergic to shows "at most, that he was negligent" when determining what antibiotic to prescribe); Chandler v. Syed, No. 19-cv-138-bbc, 2020 WL 1955443, at *3 (W.D. Wisc. Apr. 23, 2020) (finding only a one-time "mistake" akin to negligence where a defendant nurse allowed the plaintiff to be prescribed a medication that she should have known the plaintiff was allergic to). Mere negligence is insufficient to state an Eighth Amendment claim. Broyles v. Corr. Med. Servs.,

11

Inc., 478 F. App'x 971, 975 (6th Cir. 2012). Accordingly, Seymore fails to state a deliberate indifference claim.

### E. Eighth Amendment Conditions of Confinement

Lastly, to the extent Seymore alleges that Defendants violated his Eighth Amendment rights by placing him in segregation as punishment for refusing to initially take the Ivermectin pills, he fails to state a claim.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." Rhodes v. Chapman, 452 U.S. 337, 345–346 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting Rhodes, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347; see also Wilson v. Yaklich, 148 F.3d 596, 600–601 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." Rhodes, 452 U.S. at 348 (citation omitted).

Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Ivey, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992) (quoting Rhodes, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." Id.

While Seymore may have been denied certain privileges as a result of his short-term placement in segregation, he does not allege any facts that he was denied basic human needs and requirements as a result. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation or classification status cannot establish an Eighth Amendment violation. See Evans v. Vinson, 427 F. App'x 437, 443 (6th Cir. 2011); Harden-Bey v. Rutter, 524 F.3d 789, 795 (6th Cir. 2008).

For these reasons, the Court concludes that Seymore fails to state a claim upon which relief can be granted and dismisses the Complaint.

## IV.  CONCLUSION

The Court concludes that Seymore fails to state a claim upon which relief may be granted under 42 U.S.C. § 1983. Accordingly, the Complaint is dismissed pursuant to the screening standards set for under § 1915A (Dtk. 1). The Court further denies Defendants' motions as moot. (Dkts. 18, 22, 25, 26, 31).

**SO ORDERED.**

Dated: October 29, 2025             s/Mark A. Goldsmith  
Detroit, Michigan                MARK A. GOLDSMITH  
                                              United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 29, 2025.

                                                             s/Joseph Heacox  
                                                             JOSEPH HEACOX  
                                                             Case Manager